**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ANDRE WALLACE,

                Case No.: _____

        **Plaintiff,**

   -against-

KIRSCHENBAUM & PHILLIPS, P.C.,
STEVEN L. ROSENTHAL,
JAMES P. SCULLY,
CADDIS FUNDING, LLC, and
INVESTINET LLC,

        **Defendants.**
-------------------------------------------------------------------X

**ORIGINAL COMPLAINT AND JURY DEMAND**

   Plaintiff Andre Wallace brings suit against Defendants for their violations of the Fair

Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. and for conversion, and against

Kirschenbaum & Phillips, P.C. and Steven L. Rosenthal for violations of New York General

Business Law § 349 and New York Judiciary Law § 487, and in support would show as follows.

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.   The Court has federal question jurisdiction over the lawsuit because the action arises

under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. Jurisdiction of

the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of

federal law, the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over

Plaintiff's state law claims because said claims are so related to the claims within the Court's

original jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution.

3.      Venue in this district is proper because all or a substantial part of the events or omissions giving rise to the claims occurred in Bronx County, New York.

## PARTIES

4.      Plaintiff is an individual who resides in Westchester County, New York. He is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Mr. Wallace had allegedly owed consumer credit card debt, which constitutes a "debt" under 15 U.S.C. § 1692a(5).

5.      Defendant Kirschenbaum & Phillips, P.C. ("Kirschenbaum") is a debt collection law firm with its principal place of business at 40 Daniel Street, Suite 7, Farmingdale, New York 11735. It is a "debt collector" as defined under 15 U.S.C. § 1692a(6) because it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.  Further, Kirschenbaum is a debt collector because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

6.      Defendant Steven L. Rosenthal is a debt collection attorney at Kirschenbaum. Mr. Rosenthal attempts to collect putative consumer debts and court filings and letters go out under the putative personal signature of Mr. Rosenthal. Therefore Mr. Rosenthal is a debt collector as defined under 15 U.S.C. § 1692a(6) because he uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7.      Defendant James P. Scully is a debt collection attorney at Kirschenbaum. Mr. Scully attempts to collect putative consumer debts and court filings and letters go out under the putative

personal signature of Mr. Scully. Therefore Mr. Scully is a debt collector as defined under 15 U.S.C. § 1692a(6) because he uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

8.      Defendants Kirschenbaum, Mr. Rosenthal, and Mr. Scully are hence referred to collectively as the "Kirschenbaum Defendants."

9.      Defendant Caddis Funding LLC ("Caddis") is a foreign limited liability company organized and existing under the laws of the state of South Carolina. Caddis engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

10.     Caddis' primary (indeed sole) purpose is to purchase charged off consumer accounts, or putative judgments obtained on those accounts, after they are in default with the putative original creditor and have those debts collected upon. Caddis is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

11.     Defendant InvestiNet, LLC ("InvestiNet") is a foreign limited liability company organized and existing under the laws of the state of South Carolina. InvestiNet engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

12.     InvestiNet is the master servicer for Caddis, among other debt buyers, and performs services for the consumer debt accounts of Caddis such as but not limited to assigning those accounts for collection to other agencies. *See* **Exhibit A** (Caddis Website). Caddis is therefore a

debt collector as defined under 15 U.S.C. § 1692a(6) because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another; and because its principal purpose is the collection of consumer debts.

13.     Because InvestiNet is the servicer of Caddis' accounts, it is hence incorporated by reference that unless stated otherwise InvestiNet is jointly and severally liable for the conduct of Caddis in the attempts to collect the putative debt. This complaint will refer to these two entities jointly and severally as "Caddis."

## FACTUAL ALLEGATIONS

*In 2008, Mr. Wallace was sued for the putative and settled the matter with the firm Bronson & Migliaccio, LLP for $1,000.*

14.     On July 19, 2007, CSGA, LLC sued Plaintiff through debt collection law firm Bronson & Migliaccio, LLP ("B&M") over a putative consumer credit card debt of $2,290.55 in Bronx Civil County Court, captioned *CSGA, LLC v. Andre Wallace*, CV-055831/07-BX. *See* **Exhibit B** (Complaint in Collections Case).

15.     On February 26, 2008, CSGA entered a judgment against Plaintiff for $3,064.70. *See* **Exhibit C** (Judgment in Collections Case).

16.     On March 11, 2008, B&M, on behalf of CSGA, used the judgment to restrain Mr. Wallace's bank account.

17.     B&A unlawfully restrained and continued the restrained of *all* of the money in Mr. Wallace's account, approximately $1,500. Mr. Wallace could not pay rent or even purchase food from the money in his bank account. B&A's restraint was unlawful because almost all of the money in the account was from wages deposited during the restraint or within 60 days prior to the restraint.  Under NY CPLR 5231, 90 percent of wages deposited into a bank account within

the prior 60 days are exempt from restraint.

18.      Rather than releasing the illegal restraint, B&A doubled down and leveraged the illegal restraint to coerce Mr. Wallace to sign on March 31, 2008 a settlement drafted by B&A. *See* **Exhibit D** (Conditional Release Settlement).

19.      In pertinent part, the settlement  read: "[T]he parties have come to an ***agreement to settle this matter*** and the parties have agreed that upon clearance of a check in the amount of $1,000.00 and drawn on Defendant's account with Chase Bank, Plaintiff will release the restraint on Defendant's accounts." *Id*. (emphasis added).  Put another way, B&A used an illegal restraint to squeeze Mr. Wallace into paying $1,000 in order to release the balance of approximately $500 to Mr. Wallace.

20.      Even then, B&M did not release Mr. Wallace's account for weeks.

21.      Mr. Wallace recalls having a number of credit cards during a financially difficult time in his life around 2002.

22.      He could not be sure whether he owed the putative debt, and thus decided to settle rather than contest it.

23.      He thought that by paying the $1,000, he was at least foreclosing the problem and could move on.

24.      Unfortunately, the debt collectors were not done with him.

### *In 2019, Kirschenbaum restrains and garnishes Mr. Wallace's bank account based on the non-existent judgment*

25.      On February 9, 2019 – eleven years after the judgment was settled -- James P. Scully, and attorney at Kirschenbaum, executed an Information Subpoena and Restraining Notice ("the Restraint") on Mr. Wallace's seeking to collect on the settled judgment. *See* **Exhibit E** (The

Restraint).

26.     The Restraint sought to collect the full amount of the judgment, $3.022.56, not even crediting Mr. Wallace the $1,000 payment he made to settle the judgment.   The Restraint required the bank to restrain twice the amount of the judgment. Even if the judgment was never settled – which it was – failing to credit the $1,000 payment resulted in more money being restrained from Mr. Wallace's account than of the payment was credited.

27.     The caption of the Restraint was that of the original collection lawsuit (listing CSGA, LLC as the Plaintiff) but the body of the Restraint inexplicably stated that Caddis Funding, LLC was the current judgment creditor. Caddis and the Kirschenbaum Defendants affirmatively represented to the bank and to Mr. Wallace that that had a valid enforceable judgment against Mr. Wallace for $3.022.56 when in fact the judgment was settled.

28.     When the Kirschenbaum Defendants served the Restraint on Capital One, they knew and intended for the bank to forward a copy of the same to Mr. Wallace as required by state law, CPLR 5222-A(b)(3).[1]

29.     Via letter dated February 19, 2019, Capital One informed Mr. Wallace that, "As required by law, we have removed these funds in the amount of $5,549.06 and may have to turn these funds over to your creditor as directed by the order." **Exhibit F** (Capital One Restraint Notice).

30.     The Restraint was the initial communication from both Caddis and the Kirschenbaum Defendants to Mr. Wallace regarding the collection lawsuit and resulting judgment.

---

[1] Inexplicably, Capital One did not mail the Restraint with the exemption claim form as required by CPLR 5222-A(b)(3). However, a few days after Defendants restrained Mr. Wallace's bank account, Mr. Wallace went to the bank, who gave him the Restraint, **Exhibit E**, a letter dated February 19, 2019 from the bank to Mr. Wallace **Exhibit F**, the exemption claim form, and an apparent cover letter dated February 9, 2019 from Kirschenbaum to the bank enclosing the Restraint.

31.     Neither Caddis nor the Kirschenbaum Defendants sent Mr. Wallace a letter with the disclosures required by 15 U.S.C. § 1692g(a) of the FDCPA in the initial communication or within 5 days of the initial communication, or, indeed, at any point.

32.     These disclosures are particularly important here. Had the Defendants provided the required disclosure before executing on the nonexistent judgment, Mr. Wallace would have been able to invoke his rights under 15 USC 1692g(b) to send a written dispute and demand that Defendants cease collections, and, through their investigation, perhaps learn the judgment was vacated and the debt settled.

33.     Prior to the restraint on his bank account, Mr. Wallace received from no one – not CSGA, not B&M, not Caddis and not Kirschenbaum – a notice of assignment of the putative judgment. On information and belief, no such notice of assignment was ever sent to Mr. Wallace prior to the restraint of his bank account.

34.     A consumer's receipt of a notice of assignment is a condition precedent to being able to lawfully collecting on an assigned judgment. Therefore, Caddis and the Kirschenbaum Defendants violated the FDCPA by seeking to collect on the putative judgment without a legal right to do so.

35.     Upon information and belief, either Kirschenbaum did not have Scully meaningfully review the matter (which would have revealed that Mr. Wallace paid $1,000 and settled the judgment) or it knowingly executed the bank restraint on a satisfied account through a non-existent judgment. By signing the Restraint, Kirschenbaum and Scully implicitly represented to Mr. Wallace that an attorney meaningfully reviewed the facts and circumstances of the file and made a reasoned professional determination that Kirschenbaum had the right to issue the Restraint.

36.     However, if Kirschenbaum had performed a meaningful review of Mr. Wallace's account they would have determined whether a notice of assignment of the putative judgment to Caddis was ever sent; whether the amount claimed to be owed was correct; and whether a 15 U.S.C. § 1692g notice letter was sent to Mr. Wallace. As discussed below, there is no lawful right to collect a putative judgment without first sending a notice of assignment and 1692g notice.

37.     Mr. Wallace did not receive notice of the restraint, nor the attached exemption claim forms, from Kirschenbaum or his bank as required under the Exempt Income Protection Act ("EIPA").

38.     It was only about two weeks after Mr. Wallace called his bank to ask why it had been restrained that he received the Restraint.

39.     Mr. Wallace, like many trades workers, was going through a difficult time since he could not find work in his craft as a sheet metal worker. Luckily Mr. Wallace has a union, and that union has set up a Supplemental Unemployment Benefits and Underemployment Benefits independent trust fund called SASMI, to help workers like him through dry spells in getting jobs.

40.     Through SASMI, Mr. Wallace received $8,850.68 on February 14, 2019. *See* **Exhibit G** (Capital One February 2019 Statement).

41.     Mr. Wallace decided to spend about $3,600 of this money on various bills, and then to use the remainder to travel to California to meet with sheet metal union workers there and see if he could relocate there to get more work.

42.     Because he had never received notice of the bank restraint, it came as a complete surprise to him when, on or around February 19, 2019, he checked his bank account and found out that $5,549.06 had been garnished. *See* **Exhibit F**.

43.     Mr. Wallace had no idea why the bank restraint was happening, let alone that it was a debt he had paid off over eleven years before.

44.     When he called Capital One, they incorrectly told him that the restraint was due to an unrelated tax issue Mr. Wallace had previously had. However, they did give him Kirschenbaum's number to call.

45.     When Mr. Wallace called Kirschenbaum, he asked where the debt came from and what it was about. The Kirschenbaum representative was evasive and rude, but finally made a vague disclosure it was a putative Household credit card debt.

46.     Knowing that he had no such debt (or at least had not had it for more than eleven years), Mr. Wallace told Kirschenbaum that they were mistaken and the debt was not his.

47.     The Kirschenbaum representative told him that it would them 5 – 6 weeks to send him paperwork regarding the putative debt.

48.     Mr. Wallace felt helpless and confused, and did not know what to do. He felt like someone punched him in the face and he could not fight back.

49.     Mr. Wallace went to the Bronx County Clerk's office, which referred Mr. Wallace to the CLARO Clinic.[2]

50.     On March 7, 2019, with the assistance of the volunteer attorneys at CLARO, Mr. Wallace drafted an Affidavit In Support of An Order to Show Cause to Dismiss the Action for Lack of

---

[2] The Civil Legal Advice and Resource Office (CLARO) provides limited legal advice to low-income New Yorkers being sued by debt collectors. CLARO is organized through the New York State Courts Access to Justice Program. The CLARO Program's volunteer lawyers meet with individuals and advise them on how best to represent themselves in their court cases. The advice includes explaining the court process, reviewing their case files, preparing court papers and giving advice on other consumer debt issues. Unfortunately, CLARO cannot represent the consumers in court, and did not represent Mr. Wallace.

Personal Jurisdiction, challenging the affidavit of service. *See* **Exhibit H** ("OSC"). Finding merit to the application, Civil Court Judge Kim Adair Wilson issued the Order to Show Cause setting a hearing for March 28, 2019 on Mr. Wallace's application to dismiss. *Id.*  When Mr. Wallace filed the application, he had not realized that his bank account was being restrained for the same judgment that he had settled 11 years prior.

51.     Around the same time, Mr. Wallace received a letter dated February 28, 2019 from Kirschenbaum, presumably in response to his oral dispute weeks prior. *See* **Exhibit I** ("February 28 Letter," with enclosed judgment, application for default judgment, non-military service statement, and an unsigned putative Household Bank Cardmember Agreement). The letter, with the letterhead of the firm and with the putative signature of attorney Steven L. Rosenthal, violated the FDCPA.

52.     If the Kirschenbaum February 9, 2019 Information Subpoena and Bank Restraint to Mr. Wallace's bank was not considered an initial written communication to Mr. Wallace, then the February 28, 2019 letter from Kirschenbaum (and its client Caddis) was certainly an initial written communication to Mr. Wallace pursuant to 15 U.S.C. § 1692g(a). *See* **Exhibit I**.  As such, the letter violated the 1692g(a) because it did not state the amount of the putative debt, much less clearly state the correct current balance of the putative debt. The letter also violates 1692g(a) by failing to disclose to Mr. Wallace his ability to force Kirschenbaum (and Caddis) to cease collection until the debt was verified. Lastly, the letter was not sent to Mr. Kirschenbaum within 5 days of the firm's initial communication with Mr. Wallace.

53.     In any event, most importantly, the February 28 Letter (and the inclusion of the enclosed judgment itself) misrepresented to Mr. Wallace that Caddis had a valid judgment against him that Caddis and Kirschenbaum could collect upon when in fact this was not true given Mr.

Wallace's settlement of the judgment. Even if the judgment was not settled (which it was), nothing in the February 28 Letter or enclosures reflected the $1,000 payment Mr. Wallace paid. The Letter simply enclosed the judgment itself, with its full balance.

54.     The February 28 letter, under the Kirschenbaum firm letterhead, and under the putative signature of attorney Steven L. Rosenthal, impliedly represented to Mr. Wallace that an attorney was meaningfully engaged in the sending of the letter, and came to an individualized professional determination that Mr. Wallace owed the judgment, and the full amount of the judgment. However, on information and belief Kirschenbaum and Rosenthal were not meaningfully involved in the drafting and sending of the February 28 letter, and enclosed judgment. A meaningful attorney review would have entailed checking the documents and records of the client and the prior creditor and prior creditor firm to determine if there was a prior settlement or payment. Had an attorney engaged in a professional attorney investigation of the facts and circumstances of the putative judgment account, the attorney would have spotted the prior payment and settlement and, presumably, release the bank account, return all bank fees, and cease all collections. They did not.

55.     After reviewing the February 28 Letter and enclosures, Mr. Wallace realized for the first time that the Restraint on his account was based on the settled judgment.

56.     As such, on March 21, 2019 Mr. Wallace went back to CLARO and, with their assistance, executed a Supplemental Affidavit explaining that he settled the judgment upon which the Restraint was issued. See **Exhibit J** ("Supplemental Affidavit," with attachments). In support, Mr. Wallace attached the March 31, 2018 Conditional Release settlement and the April 16, 2018 request to release $1,000 from the restrained account to Bronson & Migliaccio. *Id.*

57.     At the March 28, 2019 hearing on Mr. Wallace's Motion to Dismiss, counsel from

Kirschenbaum admitted that the judgment account had in fact previously been settled. As such, the attorney entered into a Stipulation "vacating" the prior (settled) judgment, lifting all restraints, and discontinuing the action with prejudice. *See* **Exhibit K** (Stipulation of Discontinuance).

58.     To date, Defendants have not returned to Mr. Wallace the bank fees taken from his account that should have been returned given the illegal restraint.

59.     On June 4, 2019, Mr. Wallace sent Kirschenbaum a letter requesting an explanation for why Kirschenbaum would attempt to collect on a judgment that had been paid off over ten years prior. **Exhibit L** (Letter to Kirschenbaum). Kirschenbaum has ignored the request for an explanation.  They have never even issued an apology.

### *Kirschenbaum's Pattern and Practice of CSGA Collecting On Non-Existent Judgments*

60.     It is Kirschenbaum's pattern and practice to execute on and otherwise attempt collect non-existent judgments. Kirschenbaum has engaged in this practice as early as 2013 and, despite having been sued for the illegal practice many times, continues to try to collect on non-existent judgments.

61.     In *Rosas v. Arrow Financial Services, LLC, et al.,* Case No. 1:14-cv-06462 (EDNY), Kirschenbaum attempted to collect on a non-existent judgment that had been vacated on March 29, 2012. On November 26, 2013, Kirschenbaum sent Ms. Rosas a collection letter instructing her to call if she wished "to enter into arrangements to satisfy this judgment" – a judgment which again had been vacated almost a year before. *See* **Exhibit M** (Complaint from *Rosas*).

62.     In 2013, Kirschenbaum was collecting on approximately 65,000 putative judgments. *Id.* With such a large volume, it was practically impossible for Kirschenbaum to perform any

meaningful attorney review of the accounts it was attempting to collect on, the kind of meaningful review that would prevent harmful and illegal behavior such as attempting to collect on a non-existent judgment.

63.    In 2017, another consumer filed a lawsuit for Kirschenbaum attempting to collect on a non-existent judgment allegedly due to a "business plan developed by Defendants whose high volume consumer debt collection practices are more profitable by not conducting meaningful and effective review of consumer files[...]" *See* **Exhibit N** (Complaint from *Joseph*).

64.    Kirschenbaum was sued last year when it attempted to collect on a settled debt that the consumer had painstakingly made timely payments on for over six years with 85 meticulously recorded money orders. *See* **Exhibit O** (Complaint from *Rosero*).

65.    In another matter this year, Kirschenbaum continued to garnish a consumer's wages after the judgment had been vacated. *See* **Exhibit P** (Complaint from *Donadelle*).

66.    And most similar to the instant matter, in *Ventura v. CACH, LLC, et al.,* Case No. 1:19-cv-04427-GBD (SDNY), the consumer vacated a default judgment in February 2011 with a Stipulation of Settlement that he fully complied with, but then, more than seven years later, Kirschenbaum attempted to garnish Mr. Ventura's wages. *See* **Exhibit Q** (Complaint from *Ventura*).

67.    These are just some of the instances in which Kirschenbaum has executed on a non-existent judgment. All of these examples appear to stem from the same root cause: Kirschenbaum simply does not do a meaningful review of its accounts, padding its profit margins with persistent disregard for all of the consumers like Mr. Wallace who are harmed by its conduct.

68.     It appears that Kirschenbaum still does not do a meaningful attorney review of its accounts. Upon information and belief, such a review in this matter would have allowed Kirschenbaum to determine that Mr. Wallace paid $1,000 and settled the judgment.

### *CSGA's Pattern and Practice of Collecting On Non-Existent Judgments*

69.     This is not be the first time that CSGA, LLC has brought one of its satisfied consumer debt accounts back from the dead, as alleged in *McQueen v. Huddleston and Huddleston*, Case No. 1:13-cv-00302-LJC-LGF (WDNY). *See* **Exhibit R** (McQueen Complaint).

70.     Like Mr. Wallace, Donald McQueen was also sued by CSGA, LLC and had a judgment obtained against him in February 2006, and then settled the matter in March 2006. *See* **Exhibit R**.

71.     Despite this settlement, CSGA, LLC, through the collection law firm Huddleston and Huddleston, attempted to collect on the non-existent debt in early 2012 by, inter alia, stating they were "in the process of executing on a judgment taken against you." *Id*.

### *Defendant's misconduct inflicted damages on Mr. Wallace*

72.     When Mr. Wallace had learned that his bank account had been restrained but did not know why, he felt helpless despite his best efforts to try staying hopeful that an error had been made.

73.     When he told Kirschenbaum that the debt was not his and they proceeded anyways, he felt like someone had punched him in the face and he couldn't fight back.

74.     During this time, Mr. Wallace was having a hard time sleeping every night, haunted by dreams about his bank account being restrained for seemingly no reason. He would only sleep in 30-40 minute intervals.

75.     Because Mr. Wallace was living off his union unemployment benefits, it was very stressful to not have access to his bank account funds and to not know when or whether he would get them back.

76.     Mr. Wallace felt like they had his money hostage and were extorting him for more money.

77.     He lost his appetite, eating almost nothing, only drinking water.

78.     He knew getting upset would not help him solve the problem, but it was so distressful that it was impossible to not get upset. It was especially upsetting when he found out that he would have to go to court to undo Kirschenbaum's baseless bank restraint, and thus had to cancel his California trip. He still has not been able to go because if he gets called for a job, he needs to answer it. And even after finding out what he needed to do, the legal jargon being used made him uncertain up until the stipulation of discontinuance was executed as to whether he would get his money back.

79.     Mr. Wallace still has light continued anxiety about what happened to him. After all, if a debt he paid off eleven years ago can come back to hurt him again for no valid reason, he cannot trust that his bank account will not be restrained again out of nowhere.

### FIRST CLAIM FOR RELIEF:
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (ALL DEFENDANTS)

80.     Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this complaint as if fully set forth herein.

81.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices

are not competitively disadvantages, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

82.     Congress designed the FDCPA to be enforced primarily through private parties-such as plaintiff-acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

83.     The actions of the Defendants enumerated above constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

84.     The Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692c, 1692e, 1692f and 1692g . By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and

actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; failure to provide the disclosures required by 1692g; and communicating with a third-party (e.g. the bank) in connection with the collection of a putative debt in violation of 1692c(b).

**SECOND CLAIM FOR RELIEF:**
**CONVERSION (ALL DEFENDANTS)**

85.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

86.    A cause of action for conversion lies when a plaintiff establishes a) her legal ownership of a specific, identifiable piece of property, and b) the defendant's interference with her property interest in defiance of her rights.

87.    Intent to possess another's property is not an essential element of conversion, nor does the converter need to take physical possession of the property. Any wrongful exercise of dominion over a piece of property by someone other than the owner constitutes a conversion.

88.    Property subject to conversion includes readily identifiable funds from a bank account.

89.    Here, Defendants froze Mr. Wallace's bank account without any authority to do so. They knowingly and fraudulently exercised dominion over his funds, interfering with his right of possession and ability to use his money for his expenses, such as but not limited to his planned trip to California.

90.    Mr. Wallace gave notice of his legal ownership of the money in his account, and demanded its return and release.

91.    Defendants' improper restraint of Mr. Wallace's money for an unreasonable period of time without qualification, which harmfully interfered with his right to control his own property, constitutes conversion.

92.    For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, inter alia, loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's money, and resulting consequential damages resulting therefrom. Plaintiff suffered serious mental distress and disruption of his daily life.

**THIRD CLAIM FOR RELIEF:**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (as to Kirschenbaum Defendants)**

93.    Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

94.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

95.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

96.    As enumerated in the Statement of Facts, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq*. by using deceptive acts and practices in the conduct of their businesses that have broad

impact on consumers at large.

97.     Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

98.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

### FOURTH CLAIM FOR RELIEF:
### VIOLATIONS OF NEW YORK JUDICIARY LAW § 487 (as to Kirschenbaum Defendants)

99.     New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

100.    As enumerated in the Statement of Facts, the Kirschenbaum Defendants violated Judiciary Law § 487.

101.    Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

### JURY DEMAND

102.    Plaintiff demands a trial by jury.

### PRAYER

103.    WHEREFORE, Plaintiff requests the following relief:

      a.   A declaration that all Defendants have committed the violations of law alleged in this action;

b.  Statutory damages under 15 U.S.C. § 1692k and GBL 349;

c.  Reasonable attorney's fees and costs;

d.  Actual damages;

e.  Treble damages;

f.  Exemplary and punitive damages;

g.  Prejudgment and post judgment interest as allowed by law

h.  All other relief, in law and in equity, both special and general, to which Plaintiff

    may be justly entitled.

Dated: Brooklyn, New York
       October 8, 2019

                              Respectfully submitted,

                              /s/

                              Ahmad Keshavarz
                              The Law Office of Ahmad Keshavarz
                              16 Court St., 26th Floor
                              Brooklyn, NY 11241-1026
                              Phone: (718) 522-7900
                              Fax:    (877) 496-7809
                              Email: ahmad@NewYorkConsumerAttorney.com